1              UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF DELAWARE
2

3   IN RE:                         .  Chapter 7
                                   .
4   W.J. BRADLEY COMPANY MERCHANT  .  Case No. 16-11048 (KG)
    PARTNERS 2003-SEED, LLC,       .
5                                  .
              Debtor.              .
6   IN RE:                         .  Chapter 7
                                   .
7   W.J. BRADLEY MORTGAGE CAPITAL, .  Case No. 16-11049 (KG)
    LLC,                           .
8                                  .
              Debtor.              .
9   IN RE:                         .  Chapter 7
                                   .
10  W.J. BRADLEY CORPORATE SERVICES,.  Case No. 16-11050 (KG)
    LLC,                           .
11                                 .
              Debtor.              .
12  IN RE:                         .  Chapter 7
                                   .
13  W.J. BRADLEY FINANCIAL SERVICES,.  Case No. 16-11051 (KG)
    LLC,                           .
14                                 .
              Debtor.              .
15  IN RE:                         .  Chapter 7
                                   .
16  WJB MORTGAGE SERVICES, LLC,    .  Case No. 16-11052 (KG)
                                   .
17                                 .  Courtroom No. 3
                                   .  824 Market Street
18                                 .  Wilmington, Delaware 19801
                                   .
19            Debtor.              .  June 7, 2016
    . . . . . . . . . . . . . . . .   10:00 A.M.
20
                   TRANSCRIPT OF HEARING
21           BEFORE HONORABLE KEVIN GROSS
              UNITED STATES BANKRUPTCY JUDGE
22
    APPEARANCES:
23
    For Chapter 7 Trustee:   Ronald Gellert, Esquire
24                           GELLERT SCALI BUSENKELL & BROWN LLC
                             1201 N. Orange Street, Suite 300
25                           Wilmington, Delaware 19801

```
 1   ECRO:                     GINGER MACE

 2   Transcription Service:    Reliable
                               1007 N. Orange Street
 3                             Wilmington, Delaware 19801
                               Telephone:  (302) 654-8080
 4                             E-Mail:  gmatthews@reliable-co.com

 5   Proceedings recorded by electronic sound recording:
     transcript produced by transcription service.
 6

 7   APPEARANCES (Continued):

 8

     For Texas Capital Bank:   Duane Werb, Esquire
 9                             WERB & SULLIVAN
                               300 Delaware Avenue
10                             Wilmington, Delaware 19801

11                             Jason Rodriguez, Esquire
                               HIGIER ALLEN & LAUTIN
12                             2711 North Haskell Ave., Suite 2400
                               Dallas, Texas 75204
13
     For USA (HUD/GNMA):       Serajul Ali, Esquire
14                             UNITED STATES DEPARTMENT OF JUSTICE
                               P.O. Box 875
15                             Washington, DC 20044-0875

16   For Towne Mortgage Co.:   Jeremy Ryan, Esquire
                               POTTER ANDERSON & CORROON
17                             1313 North Market Street
                               Wilmington, Delaware 19801
18
     For W.J.B. Loan LP:       Lee Attanasio, Esquire
19                             SIDLEY AUSTIN LLP
                               787 Seventh Avenue
20                             New York, New York 10019

21                             William Bowden, Esquire
                               ASHBY & GEDDES, P.A.
22                             500 Delaware Avenue, 8th Floor
                               Wilmington, Delaware 19899
23
     For Freddie Mac:          Cory Falgowski, Esquire
24                             REED SMITH
                               1201 N. Market Street, Suite 1500
25                             Wilmington, Delaware 19801
```

1                              <u>INDEX</u>

2                                                        <u>Page</u>

3  <u>NOTICE OF AGENDA MATTERS:</u>
   For the Chapter 7 Trustee, by Mr. Gellert            5
4  For Texas Capital Bank, by Mr. Werb                  8
   For Texas Capital Bank, by Mr. Rodriguez            8
5  For HUD/GNMA, by Mr. Ali                            12
   For Towne Mortgage, by Mr. Ryan                     17
6  For W.J.B. Loan LP, by Ms. Attanasio                18
   For Freddie Mac, by Mr. Falgowski                   22
7  For W.J.B. Loan, by Mr. Bowden                      41

8

   <u>Exhibit</u>                            <u>Ident.</u>    <u>Evid.</u>
9
   HUD/GNMA 1  Declaration of Paul Saint-Laurent III    15
10 HUD/GNMA 2  Exhibits B through G                      16

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        (Proceedings commence at 10:00 a.m.)

2        (Call to Order of the Court)

3            THE COURT:  Good morning, everyone.  You may be

4   seated.  Good to see you all.

5            Mr. Gellert, good morning.

6            MR. GELLERT:  Good morning, Your Honor, Ronald

7   Gellert, Gellert Scali Busenkell & Brown, on behalf of the

8   Chapter 7 Trustee, George Miller.

9            THE COURT:  Yes, sir.

10            MR. GELLERT:  Your Honor, there is only one matter

11   on the agenda today which is the motion of the Trustee to

12   compel the turnover of certain accounts held by Texas Capital

13   Bank.  Your Honor, I think this -- well, it started out as a

14   pretty simple motion.

15            THE COURT:  Yes, I was going to ask you do we have

16   a big fight, a little fight or no fight here today.

17            MR. GELLERT:  I don't think there's a huge fight;

18   although, the issue from our perspective is one of

19   accomplishing the Trustees duties under Section 704.

20            THE COURT:  Yes.

21            MR. GELLERT:  And the issue that the Trustee is

22   particularly having is that there is a myriad of parties

23   expressing interest in the same accounts, and/or same

24   money's, and what we want to do is make sure that money's and

25   accounts are not distributed without a full accounting,

1  without an understanding of who the real owner is, where

2  these accounts should go if at all and whether they truly

3  estate property.  So it was an effort to stop the clock,

4  pause for a minute, figure out where these accounts belong.

5          THE COURT:  And that is the Trustees

6  responsibility.  I recognize that, Mr. Gellert.

7          MR. GELLERT:  And I think what you have seen or

8  what you will see is some of the -- there is some confusion

9  and I think that gives some credence to what we're asking.

10  And you'll see, for example, Ginnie Mae askes for return of

11  some funds in an account ending 0503; they give an amount of

12  215,000.  But some information that we have from Texas

13  Capital Bank, when they give what their account totals are,

14  well that's in account 0529 is the same -- is a similar

15  amount of money and there's actually no money in 0503.

16          And I don't mean to testify, but my point is, Your

17  Honor, I think there is a certain lack of clarity at this

18  juncture so that when we say money's or accounts should go to

19  X party or Y party today, it's very unclear that that's a

20  prudent idea until we can straighten all of that out.

21          We knew of 11 accounts going in, that the Trustee

22  did.  It appears that there are more accounts then we even

23  knew.  The four lettered accounts, as you have seen, there's

24  different accounts, I think, that Ginnie Mae makes reference

25  to, that Towne makes reference to and I think there may be

1  even more accounts that you might here about WJB loan is

2  discussing with us as well.

3          So, again, it's not an effort for the Trustee to

4  grab money away from people.  It's an effort to secure these

5  accounts and these funds until we can fully vet where they

6  belong, if not in the estate itself.  We've had some

7  instances, you know at least one instance of a post-petition

8  wire that was issued, and not at the direction of the

9  Trustee.

10          THE COURT:  Right.

11          MR. GELLERT:  Not at the direction of the Debtor,

12  I don't even believe.  So, and that's another example of why

13  we think we need to secure these accounts and these

14  properties.  We want to make sure that anything we do when we

15  get the accounts in from here on out is done with Court

16  approval, Court knowledge.  So to the extent that we get

17  these accounts in, and I think we put it in our proposed

18  order, it basically says we're going to keep the *status quo*

19  with respect to these accounts until further Court order.  So

20  that, I think everybody should have some comfort level that

21  the moneys are being secured by the Trustee in execution of

22  his responsibilities, and that they're not going anywhere and

23  that there is no concern that there is going to be a

24  dissipation of those assets in the meantime.

25          So, again, we're asking the Court to allow the

1    Trustee to enforce his rights and obligations, secure the

2    accounts and funds, segregate and all subject to further

3    Court order.  Your Honor, unless you have questions, I think

4    it's pretty straight forward from our perspective.

5              THE COURT:  Well, Ginnie Mae --

6              MR. GELLERT:  Yeah.

7              THE COURT:  -- extinguished, did it not,

8    prepetition the Debtors' rights in the accounts?

9              MR. GELLERT:  That's my understanding.

10             THE COURT:  Okay.

11             MR. GELLERT:  And the only thing I will say about

12   that is, you know, they can make a presentation about whether

13   this, in fact, is property of the estate and whether its not,

14   but I raise the issue of what account they think that their

15   money's are held in.  I think there is a discrepancy at this

16   point of what that account is.  So short of us understanding

17   what is the right account and where the funds are and where

18   they should go, I still have some hesitation of saying, yeah,

19   you cancelled this out, we're not your servicer, take the

20   funds.  I still have some concerns that we want to make sure

21   that you're taking the right accounts and the right funds.

22             THE COURT:  All right.  Thank you, Mr. Gellert.

23             MR. GELLERT:  Thank you, Your Honor.

24             THE COURT:  We'll hear from other parties now.

25             MR. WERB:  Good morning, Your Honor.

1          THE COURT:  Good morning, Mr. Werb, how are you

2   sir?

3          MR. WERB:  I'm just fine today.  How are you, sir?

4          THE COURT:  Doing well.  Thank you.

5          MR. WERB:  Your Honor, to my left is Jason

6   Rodriguez and he serves as counsel to the bank in this case,

7   Texas Capital Bank, N.A.

8          THE COURT:  Yes.

9          MR. RODRIGUEZ:  Thank you, Your Honor, Jason

10  Rodriguez.

11          THE COURT:  Good morning.

12          MR. RODRIGUEZ:  Good morning, sir.  I rise to

13  answer whatever questions Your Honor may have and just to

14  give you an overview of our position.  In essence, the bank

15  is sort of caught in the middle.

16          THE COURT:  Yes.

17          MR. RODRIGUEZ:  Upon receipt of the demand letter

18  we were already in contact with other interested parties.  We

19  emailed out the demand letter to the interested parties

20  including LenderLive the sub-servicer, and we were

21  immediately told, especially by Ginnie Mae, that, you know,

22  do not release that money, that is our money, we've got

23  interest and its ours.  So we communicated the other day,

24  Your Honor, which it's an estate issue.  We don't want to be

25  in the middle of determining whose money it is, but at the

1  same time we want to be in full compliance with whatever the

2  law is and whatever the Judge says.

3           I can go over some of the accounts if you'd like.

4           THE COURT:  I was going to ask you if you could

5  shed some light on those facts.

6           MR. RODRIGUEZ:  Certainly, Your Honor.

7           The accounts in question that were subject of the

8  demand letter were 11 numbered accounts at Texas Capital

9  Bank, TCB.  All of those 11 numbered accounts were in the

10 name of, if you will, W.J. Bradley Mortgage Capital, LLC.

11 And these are going to be separate from the lettered accounts

12 which are what Ginnie Mae is most concerned about, I think,

13 and I don't want to go too far into what Mr. Ali may be

14 arguing.  But you can sort of differentiate them, and the

15 reason for that is the Ginnie Mae letter accounts were at one

16 point custodial accounts.  About a month prior to the

17 bankruptcy they were retitled into Ginnie Mae's name and now

18 they are no longer in the W.J. Bradley name.

19          The remaining 11 accounts, of those, the majority

20 are what you can consider custodial accounts.  They're

21 custodial accounts for Fannie or Freddie, or custodial

22 accounts for taxes and insurance just by itself in the name

23 of the homeowners.  Of those 11 presently there are only

24 three accounts with funds remaining in them.

25          Just for the record I don't expect the Judge to

1  remember all the account numbers, but the account ending in

2  9182 is a Fannie Mae P&I custodial titled account and that's

3  got $770.00 dollars in it.  Account ending 0529 is titled as

4  an investor T&I, taxes and insurance custodial account, and

5  that's got the bulk of the funds in it which is $216,434.00

6  dollars.

7         And then, there is a non-custodial account which

8  holds funds which are likely to be funds attributable to an

9  agency, but the account is not titled as a custodial account,

10 so it's a little fuzzy there and that's got approximately

11 $52,259.00 dollars in it.  There was a Fannie custodial

12 account which held approximately $52,000.00 dollars in it at

13 the time of the petition.

14        Upon receiving the demand letter from the Trustee,

15 TCB restricted the account for withdrawals, for wire

16 transfers and tried to, for lack of a better word, lock it

17 down.  For whatever reason TCB's attempt to lock it down did

18 not stop an ACH request from LenderLive.  The bank became

19 aware of the ACH outbound of approximately $52,000.00 about

20 36 hours after it occurred.  It immediately moved to, there's

21 a technical term for it, but clawback the money.

22        THE COURT:  Okay.

23        MR. RODRIGUEZ:  That request was dishonored

24 because it had gone out already.  We, probably upon receiving

25 that dishonor the bank sent an email to LenderLive's

1  representative and said you are not allowed to do that, why

2  did you do that and where did the money go.  LenderLive has

3  not responded to that query.  It's something we've talked to

4  the Trustees attorney's about.  We're trying to put it

5  together and show the actions we took and to the extent we

6  can get anything back from LenderLive about what happened

7  then we're going to share that as well.

8          So that covers, you know, the 11 accounts which

9  were the primary subject.  In addition, there's the lettered

10  accounts that Ginnie renamed just prior to the bankruptcy.

11  There's four of those, there's a significant more amount of

12  money in those accounts and then there is, you know, several

13  accounts which have been opened and closed throughout the

14  years.  To my knowledge there is no material amount of funds

15  in any other accounts in the name of W.J. Bradley at the

16  bank.

17          THE COURT:  All right.  The Fannie Mae account you

18  just discussed where LenderLive removed funds, is that

19  separate from 0529?  They're approximately the same amount of

20  money.

21          MR. RODRIGUEZ:  Yes, Your Honor, that was a

22  separate account.

23          THE COURT:  Okay.

24          MR. RODRIGUEZ:  And I couldn't tell you what the -

25  - 0529 has 216,000, 0503 has 52.

1        THE COURT:  Yes, 0503, excuse me, yes.

2        MR. RODRIGUEZ:  The coincidence of the numbers I'm

3   not aware of any relationship there.

4        THE COURT:  Okay.  All right.

5        MR. RODRIGUEZ:  If it would please the Court I can

6   go into the background relationship, but that's the crux of

7   where we're at today.

8        THE COURT:  That's fine.  Why don't you stay handy

9   in case we have further questions, Mr. Rodriguez?

10        MR. RODRIGUEZ:  Of course, Your Honor.

11        THE COURT:  Thank you, sir.

12        Good morning.

13        MR. ALI:  Good morning, Your Honor, may I please

14   the Court Serajul Ali, United States Department of Justice,

15   on behalf of the United States.

16        THE COURT:  Mr. Ali, it's good to have you here.

17        MR. ALI:  Good to be here, Your Honor.

18        The United States, on behalf of Ginnie Mae and

19   HUD, object to the motion to the extent that it encompasses

20   the lettered accounts.  And an important point to make at the

21   outset is I tried to meet and confer with the Trustees

22   counsel to determine whether or not these four lettered

23   accounts, which are retitled in Ginnie Mae's name,

24   approximately a month prior to the filing of the petitions in

25   these cases, was encompassed by the Trustees motion.  To the

1  extent that they are, you know, our position is these were

2  custodial funds, the accounts are retitled and we'd like a

3  clarification so that Texas Capital Bank can release these

4  funds to Ginnie Mae.  And I know in Texas Capital Bank's

5  presentation there has been some confusion raised regarding

6  whether the other, approximately, 216,000 that Ginnie Mae is

7  claiming is in account 0503 or 0529.

8              THE COURT:  Yes.

9              MR. ALI:  Wherever that money may be, Ginnie Mae's

10  position is that those funds are claim funds related to the

11  mortgages that were packaged into the mortgage backed

12  securities.  And under the guarantee agreements upon

13  extinguishment of W.J. Bradley Mortgage Capital as the issuer

14  in this case, the servicer for lack of a better term, the

15  mortgages, and all accounts and payments relating thereto

16  become the absolute property of Ginnie Mae.  So not only the

17  lettered accounts, to the extent that they are encompassed by

18  the Trustees motion, but also these claim funds amounting to

19  approximately 216,000 wherever they may be.

20              And I understand that Your Honor may have some

21  factual issues before you and to the extent that you are

22  reluctant to make a ruling as to the 216,000, given that

23  there may be confusion about which account it's in, our

24  position is that the lettered accounts are certainly

25  distinguishable from that and at a minimum we'd request that

1  the lettered accounts be excluded from the motion by the

2  Trustees counsel or there be a determination by the Court

3  that the lettered accounts are not property of the bankruptcy

4  estate.  I think Your Honor understands how this process

5  works; Ginnie Mae is the guarantor of those mortgage backed

6  securities.

7          THE COURT:  Right.

8          Mr. ALI:  And Ginnie Mae has actually had to

9  already advance the money represented by money in the

10  lettered accounts to pay investors and other parties that are

11  entitled to payment.  And recovery of the lettered accounts

12  would, in essence, just be Ginnie Mae recovering money's

13  already had to advance upon default of W.J. Bradley Mortgage

14  Capital.

15          Your Honor, in support of our objection we'd like

16  to proffer the declaration of Mr. Paul Saint-Laurent the III.

17          THE COURT:  Yes.

18          MR. ALI:  Mr. Saint-Laurent is available and in

19  the Courtroom here today, available for cross-examination.

20  At this time we'd like to move that his declaration be

21  admitted into evidence.

22          THE COURT:  Does anyone have any objection to my

23  admitting into evidence that declaration?  All right, hearing

24  no objection it is admitted then, Mr. Ali.

25          (HUD/GNMA Exhibit 1 admitted into evidence)

1          MR. ALI:   Thank you, Your Honor.   Given that Mr.

2    Saint-Laurent's declaration has been admitted and it lays the

3    foundation for Exhibits B through G --

4          THE COURT:   Yes.

5          MR. ALI:   -- accompanying our objection, I'd like

6    to ask for the admission of those exhibits at this time.

7          THE COURT:   Any objections?   Hearing none, they

8    are admitted.

9       (Exhibits B through G admitted into evidence)

10          MR. ALI:   So I think Your Honor has read our

11   papers --

12          THE COURT:   Yes.

13          MR. ALI:   -- so I won't belabor the point.   At a

14   minimum we'd like to have clarification that the lettered

15   accounts are the absolute property of Ginnie Mae.   To the

16   extent that Your Honor is inclined to make a determination

17   our position is that the $215,752.93, the approximately

18   $216,000.00 dollars whether it be in account 0503 or 0529

19   represents claim funds relating to the mortgages that were

20   the basis for the mortgage backed securities and upon

21   extinguishment of W.J. Bradley Mortgage Capital as a servicer

22   those funds are the absolute property of Ginnie Mae as well,

23   per the guarantee agreements.

24          If Your Honor has no questions for me, that

25   concludes my remarks.

1          THE COURT:  All right.  Thank you, Mr. Ali.

2          MR. ALI:  Thank you, Your Honor.

3          THE COURT:  Good morning, Mr. Ryan, how are you

4 sir?

5          MR. RYAN:  Good morning, Your Honor, I'm well.

6 Thank you.

7          THE COURT:  Are you here to shed light?

8          MR. RYAN:  I think for the most part Ginnie Mae

9 has shed the light that needs to be shed on this.  I do

10 represent Towne Mortgage who is the replacement servicer --

11          THE COURT:  Yes.

12          MR. RYAN:  And we do rise to support them.

13          I think, Your Honor, on the lettered accounts the

14 evidence before you is they have been retitled.  If the

15 Trustee thinks they have a remedy it lies in perhaps a

16 preference action or something like that.

17          THE COURT:  Right.

18          MR. RYAN:  But as a *prima facie* level those are no

19 longer, I don't think any real argument can be made that

20 they're property of the estate either legal or equitable

21 title.  So I think certainly those should go.

22          With respect to the $216,000.00 dollars, Your

23 Honor, I think it's important to remember that the Trustees

24 request of let's just let this money sit in an account and

25 we'll figure it out, these are taxes and insurance.

1          THE COURT:  Yes.

2          MR. RYAN:  You know, real people have real

3   property taxes due.  I would imagine their structured like

4   most where you get a discount if you pay early, you pay on

5   time, you pay a par and if you're late there's a penalty.

6   And so there are real people with real consequences for this,

7   not just financial institutions.  And so I think to the

8   extent -- I think Your Honor has enough before you today to

9   rule and to allow those funds to do it, but if Your Honor

10  wants further record I think we need to do this on an

11  expedited basis so that, you know, not only the financial

12  institutions caught up in the middle of this, but also the

13  underlying mortgage borrowers who are affected especially by

14  taxes and insurance are not prejudiced either.

15         THE COURT:  All right.

16         MR. RYAN:  Thank you.

17         THE COURT:  Thank you, Mr. Ryan.

18         Good morning.

19         MS. ATTANASIO:  Good morning, Judge, for the

20  record Lee Attanasio, Sidley Austin, on behalf of W.J.B. Loan

21  LP to which Mr. Gellert referred earlier.

22         Your Honor, we are supportive of the relief the

23  Debtor is seeking, which is why we did not weigh-in as others

24  did.  And the reason we are supportive of the Debtors' relief

25  is because it is clear to everyone, both before this motion

1  was teed up and certainly now, that there are a number of

2  parties with claims to assets that the Debtor is holding in a

3  variety of accounts, both with TCB and otherwise.

4          Judge, by way of background, our client W.J.B.

5  Loan purchased participations in a variety of the mortgage

6  loans that Mortgage Capital, the Debtor, either itself

7  purchased or purchased participations in.  We believe that

8  those participations are themselves ownership rights and

9  divested the Debtor of its interest, at least to the extent

10 of those participations.  I don't know that any of those

11 participation interests are at issue here.  I don't know that

12 they reflect assets that have now been converted to cash that

13 are sitting in numbered and lettered accounts. I don't have

14 the information to know that.

15         There are separate accounts which we believe are

16 absolutely subject to our participations and which we believe

17 are not property of the estate, and we've been working with

18 Mr. Gellert to try and sort that out.  But as we sit here

19 today it seems very clear that there is some uncertainty

20 around ownership and other interests that parties may have in

21 assets that the Debtor may be in possession of, may be

22 claiming, we don't know.

23         And So for those reasons we think it's absolutely

24 appropriate to kind of put a freeze on, collect the assets

25 and let the Court, to the extent necessary, sort out these

1    various interests.  And we would be happy to help in that

2    process and happy to tee up whatever issues would get us to a

3    resolution most quickly.

4              THE COURT:  How do we resolve the issues?

5              MS. ATTANASIO:  Well, Judge, again we've spoken

6    with Mr. Gellert.  And we have information -- we have some

7    amount of information, at least as to the loans in which are

8    client participated.  We are trying to get additional

9    information, and I know Mr. Gellert is trying to do the same.

10             As to some of the loans, I don't believe there is

11   or should be a big dispute as between us and the estate.  We

12   believe those sold participations are no longer property of

13   the estate and we'd like to get our hands on them.  If we

14   can't reach an agreement with Mr. Gellert as to those loans -

15   - again, I don't believe those loans are subject to the

16   motion today.  If we can't reach an accommodation we're

17   certainly happy to tee it up by motion or adversary here as

18   the Court would like.

19             THE COURT:  You say the loans are not the subject

20   of the motion?

21             MS. ATTANASIO:  We have -- there are two

22   categories of loans, at least vis-a-vis my client.  One are

23   what is called loans held for cash.  I don't believe those

24   loans or their proceeds were held at TCB.

25             THE COURT:  Okay.

1        MS. ATTANASIO:  Separately, there are loans that

2  were either participated or funded by TCB.  We purchased a

3  participation in the participations that the Debtor, W.J.B.

4  Mortgage, purchased.  Again, as to that participation

5  interest we believe we own it or its proceeds.  I have no way

6  of sorting out whether that interest is the subject of the

7  lettered or numbered accounts, but I don't believe so.  And

8  certainly to the extent that accounts have been retitled I'm

9  not sure there's much we can do about it frankly, but

10  perhaps, you know, the Trustee will take care of that, as

11  people have discussed, in some other fashion down the road.

12        But really, I'm rising only because I wanted the

13  Court to be aware that we've been in contact with Mr.

14  Gellert.  We do have interests which we believe are ownership

15  interests that actually divest the Debtor of its property

16  rights in a variety of assets that will need to be addressed

17  at some point.  And for the moment, any process that

18  maintains the *status quo* is certainly one we would support.

19        THE COURT:  Well these accounts that we're talking

20  about are basically escrow accounts, are they not, that are

21  used to pay principal and interest, and taxes and insurance.

22        MS. ATTANASIO:  The TCB accounts that are subject

23  to the motion?

24        THE COURT:  Yes.

25        MS. ATTANASIO:  That may be correct, Your Honor.

1  I don't actually have much information about those accounts.

2  And it was hard to glean any further information, frankly,

3  from the filings.

4           THE COURT:  Okay.  All right.  Thank you, Ms.

5  Attanasio.

6           MS. ATTANASIO:  Thank you.

7           THE COURT:  Mr. Falgowski, good morning.

8           MR. FALGOWSKI:  Good morning, Your Honor, Cory

9  Falgowski from Reed Smith on behalf of Freddie Mac.

10          THE COURT:  Yes.

11          MR. FALGOWSKI:  Your Honor, we didn't file an

12 objection because it was our belief that all of the Texas

13 Capital Bank accounts that had held Freddie Mac custodial

14 funds were zeroed out, did not hold any funds as of the time

15 of the bankruptcy; and therefore, we weren't implicated by

16 the turnover motion.

17          We did -- subsequently, Towne Mortgage filed their

18 objection to the turnover motion and indicated in it that

19 they believed that there might be about $10,831.00 dollars

20 and change that was essentially principal in interest or

21 escrows that were withheld at the time of closing of certain

22 loans and, therefore, they're Freddie Mac custodial funds.

23 And so we wanted to come -- Freddie Mac is still

24 investigating whether that is, in fact, the case.  And so as

25 I stand here today I don't know for sure; however, you know,

1  to the extent that there are custodial funds that are held at

2  Texas Capital Bank.  You know, it's our position that those

3  custodial funds are not estate property under Section 541(d)

4  which, I think, the statute, it's pretty unusual to have a

5  statute that specifically addresses a particular situation

6  like the secondary mortgage market like 541(d) does.

7           THE COURT:  Yes.

8           MR. FALGOWSKI:  And so I understand Mr. Gellert is

9  only seeking, what he calls, a *status quo* order, but it seems

10 to me that we might be a little premature for the entry of

11 that type of order, that it may create some undue leverage

12 because I think there are probably issues between and among

13 parties in this room that are not before the Court at this

14 point.  So my concern is there will either be some unfair

15 leverage that may be created arising out of entry of that

16 type of order.

17           And, Your Honor, it's our position that if the

18 funds are to find a home somewhere, it should be, if they're

19 Freddie Mac custodial funds that they be transferred to

20 Freddie Mac or to the new servicer for the underlying

21 mortgage loans, Towne Mortgage, to be held in appropriate

22 custodial accounts for Freddie Mac's benefit.

23           THE COURT:  All right.  Thank you, Mr. Falgowski.

24           MR. FALGOWSKI:  Thank you.

25           THE COURT:  Mr. Rodriguez, yes, sir.

1       MR. RODRIGUEZ:  Your Honor, may I intercede just

2  for the sake of clarity?

3       THE COURT:  Yes, you may.

4       MR. RODRIGUEZ:  I don't mean to make a

5  determination as to the legal nature of any of Freddie Mac's

6  funds, but by way of clarification Freddie Mac had two

7  "custodial funds" at TCB.  Those were funds or accounts

8  ending 9232 and 9240 as of the petition date and as of today

9  those "custodial accounts" had a zero balance.  Although,

10 it's entirely likely or possible, forgive me, that Freddie

11 Mac has funds that would be, otherwise, subject to a

12 custodial agreement perhaps in a clearing account or

13 something like that.

14      THE COURT:  But not funds that could be

15 attributable in any way to the Debtors, to the Trustee?

16      MR. RODRIGUEZ:  I couldn't answer that from a

17 legal perspective.  I'm just looking at a spreadsheet that

18 shows account balances for accounts that have named Freddie

19 Mac -- yeah, Freddie Mac custodial accounts; there's two of

20 them, a P&I and T&I, and those have zero balances.  But

21 because of the way the funds would flow into the Debtor, it's

22 possible that those funds are attributable to a Freddie Mac

23 loan that just we're not inside that custodial account at the

24 time of the bankruptcy filing.

25      THE COURT:  Okay.  All right, thank you.  Thank

1  you, Mr. Rodriguez.

2          Mr. Gellert.

3          MR. GELLERT:  I'll just try and make it brief.

4  Your Honor, I think that one of the main issues still exists

5  and that is a very unclear picture of what funds are in what

6  account and belong to whom.

7          THE COURT:  Yes.

8          MR. GELLERT:  I know that Mr. Ryan was kind of

9  making a little bit of a joke that, you know, these funds are

10  not going to sit and, in fact, we've asked for accounting

11  from anyone and everyone who has an interest in these funds

12  to tell us what funds are in those accounts and where they

13  believe they belong.  And to date, and this is about a month,

14  we have not seen a single accounting on any of these accounts

15  about these things.

16          So while Ginnie Mae puts together a block of

17  evidence and documents associating what their rights would

18  be; I still don't know what accounts and what amounts are

19  specific to them.  Now I think there's been some, I guess

20  they can make a guess or an educated guess as to what's there

21  and where, but I don't have an accounting.  We've asked for

22  accounting from anyone and everyone who would listen or we

23  have talked to about this and we don't have that.

24          So we're concerned with the notion that money will

25  be transferred out before there's a clear picture as to what

1  that money is there for, who it belongs to and if it belongs,

2  principal and interest or taxes and insurance; the Trustee

3  isn't interested in taking money that doesn't belong to him,

4  the Trustee is interested in securing property that may be of

5  interest to the estate or creditors of the estate and at the

6  same time making sure that money doesn't go to the wrong

7  place.

8          In fact, some of those principal and interest

9  accounts, this is where the Debtor was making a portion of

10  its income.  So when you process through the principal and

11  interest payments there is a percentage that comes back to

12  the estate.  So those accounts could be, I don't want to use

13  the co-mingled, but there is a possibility that by virtue of

14  these transactions that there's some money owed back to the

15  estate.  So that is why we've asked for an accounting.

16          And Your Honor asked, well, how do we resolve

17  this?  I think its resolved by virtue of making sure that we

18  get a timely accounting from those parties who feel that they

19  have an interest in those funds; not just the legal right to

20  those funds because that's fine.  And I don't think we had

21  much of a dispute with Ginnie Mae that they believe that they

22  have these rights.  I don't know what accounts and what funds

23  that they are asking for.  So in short of that, I don't think

24  it's prudent to let anything go out the door until we know

25  what belongs to whom and what account it sits.

1          THE COURT:  All right.

2          MR. GELLERT:  Thank you, Your Honor.

3          THE COURT:  Thank you.

4          MR. ALI:  Your Honor, for the record Serajul Ali -

5  -

6          THE COURT:  Yes, Mr. Ali.

7          MR. ALI:  -- on behalf of the United States again.

8          I just want to respond, very briefly, to what Mr.

9  Gellert just said.  To the extent that --

10          THE COURT:  Well, these funds aren't going

11  anywhere, is that right at the moment?

12          MR. ALI:  That is correct, Your Honor, but I

13  wanted to make a point as to the funds that Mr. Gellert said

14  that Bradley may be entitled to as part of its service fee.

15          THE COURT:  Yes.

16          MR. ALI:  I can't speak to the other agencies, but

17  with respect to the Ginnie Mae guarantee agreements, once a

18  servicer is disqualified they forfeit any interest in the

19  custodial accounts even to the extent that it includes that

20  fees that it has earned.  So I wanted Your Honor to be aware

21  of that point in reference to Mr. Gellert's addition to his

22  original comments.

23          THE COURT:  Okay.

24          MR. ALI:  Thank you, Your Honor.

25          THE COURT:  Thank you, Mr. Ali.

1           Mr. Rodriguez, I have a question for you, sir.

2   There you are.  These funds are being held at TCB?

3           MR. RODRIGUEZ:  Yes, Your Honor.

4           THE COURT:  Do we need some kind of an order

5   freezing those funds?

6           MR. RODRIGUEZ:  Just from our protection

7   standpoint it would be helpful.  At the moment the funds are

8   in accounts which have been blocked, restricted and, for lack

9   of a better word, frozen.

10          THE COURT:  Yes.

11          MR. RODRIGUEZ:  My understanding is the issue with

12  the ability of ACH has been resolved.  No one can ACH out of

13  those accounts right now.

14          THE COURT:  Okay.

15          MR. RODRIGUEZ:  So they're sitting there, they're

16  not being moved.  From the bank's peace of mind it would be

17  nice to have an order or direction from the Judge as to what

18  to do because of the competing concerns, but no is

19  withdrawing it, no one is transferring it or anything like

20  that right now.

21          THE COURT:  And are you able to more precisely

22  provide, at least, an accounting of what accounts you've got

23  and in whose name they're presently titled and the like?

24          MR. RODRIGUEZ:  Yes, well not an accounting as to

25  whose funds are attributable to whom because the bank, with

1  regard to these, was basically functioning like a DDA.

2          THE COURT:  Okay.

3          MR. RODRIGUEZ:  We see money coming in, we see

4  money going out.  I have provided the Trustee with a list of

5  accounts with full account names, full account numbers, full

6  account short title as in whose name is it in, what's it

7  called, what's its number as well as the balance as of 5/20

8  which is the same balance as of today.  I can provide that to

9  -- I think I've provided that to Towne also with the Trustees

10  permission.  The only person, I think, that has access to the

11  Ginnie Mae lettered accounts to view is Ginnie Mae.

12          THE COURT:  Okay.

13          MR. RODRIGUEZ:  I have not shared that information

14  with the Trustee at this time.  Those accounts are also

15  locked down right now because of the turnover motion.  And

16  so, those again, the distinction between those two loans.

17          THE COURT:  All right.  Thank you.

18          UNIDENTIFIED SPEAKER:  We would certainly

19  appreciate the account listing if that would be acceptable.

20          MR. RODRIGUEZ:  Certainly, as long as the Trustee

21  is okay with us sharing that information we're happy to share

22  it.

23          THE COURT:  All right.  You're all right with

24  that, Mr. Gellert?

25          MR. GELLERT:  Yes.

1          THE COURT:  Would any of the parties here today?

2          MR. GELLERT:  I don't have an issue with any of

3    the parties.

4          THE COURT:  All right.  Very well.

5          You know, it's a confusing situation and I don't

6    think that anyone really has a full view of it.  I was

7    prepared to say that the lettered accounts, clearly, are not

8    property of the estate and are property of Ginnie Mae, but

9    I'm going to hold back on that just to give the parties an

10   opportunity to review the accounts.  I'm not going to order

11   that they be placed into the custody of the Trustee, but I

12   think what we need to do is just pause for a moment, for a

13   very short moment.  As Mr. Ryan points out there is real

14   interest in these funds, and the taxes and insurance

15   certainly concern the Court.

16         And I'm just thinking, you know, I haven't heard

17   any evidence.  I have the declaration, of course, of Mr.

18   Laurent that's been admitted and it's helpful, but it's not

19   the full picture of all of these various accounts.  And I

20   hate to put off for another day the resolution of the motion

21   that the Trustee has filed or for that matter the objections

22   that have been filed, but I think I've got to because I

23   really don't know the circumstances behind these accounts.

24   And no one has fully apprised me of the accounts, and the

25   amounts, and the titles and the like.

1          Would it be helpful to the parties if the Court

2    scheduled a hearing, in say, two weeks for the parties to

3    come back, and during those two weeks to have talked and try

4    to resolve some of these issues, if not all of them?

5          MR. GELLERT:  I think that would be ideal to at

6    least kind of keep us honest and working.  And our view is if

7    we can get an accountings as soon as possible, hopefully we

8    can work this out.  But, again, since we don't have that

9    information it's hard to make a resolution and understanding.

10   So we could use those two weeks, definitely, to make sure

11   that we can hound people for that information and that will

12   help us -- the clarity will help us be able to make some

13   decisions and maybe even resolve the issues.

14          THE COURT:  I mean, the four lettered accounts I

15   feel confident, but not certain, that those belong to Ginnie

16   Mae.

17          MR. GELLERT:  My suspicion is that you're probably

18   right, Your Honor.

19          THE COURT:  But I don't have any hard proof of

20   that today or the amounts.  And I'm not certain that even the

21   account numbers are accurately portrayed.

22          Mr. Rodriguez, yes, sir.

23          MR. RODRIGUEZ:  Sorry, Your Honor, I didn't mean

24   to be wheeling and dealing.

25          THE COURT:  No, no, that's okay.

1          MR. RODRIGUEZ:  As long as I'm up here.  My client

2   representative informs me that in two weeks he will be

3   unavailable.  I don't know if that matters to the Court to

4   not have him available.  I can certainly be available to Your

5   Honor.  It's just a matter of some of the concerns and who

6   would need to be here for that.

7          THE COURT:  Well, if we're going to get into an

8   evidentiary hearing I think that you may need a witness.

9          MR. RODRIGUEZ:  Yes, Your Honor.

10         THE COURT:  So we can accommodate to you, I think,

11  with the schedule and we'll look at that in a moment.

12         MR. RODRIGUEZ:  Okay.  Certainly.

13         Ms. Attanasio, yes.

14         MS. ATTANASIO:  If I may, Your Honor, and I don't

15  want to trash the parties so to speak, but as I eluded to my

16  client W.J.B. Loan --

17         THE COURT:  Yes.

18         MS. ATTANASIO:  -- has similar disputes and in

19  some measure potentially relating to the TCB accounts, I

20  don't know that.

21         THE COURT:  Right.

22         MS. ATTANASIO:  But certainly has similar issues

23  as they relate to this other bucket of mortgage loans that I

24  referred to as the loans held for cash.  I wonder, in light

25  of the fact that we are pushing this down the road, if it

1  would make sense to build into that hearing, whenever it may

2  be set and for whatever its worth, I too am unavailable in

3  two weeks, but I have others in my firm who certainly are.

4          THE COURT:  Okay.  All right.

5          MS. ATTANASIO:  If we might perhaps build into

6  that hearing a determination as to the rights vis-à-vis those

7  separate loans, and if so I would be happy to either work

8  that out with Mr. Gellert or take the direction from the

9  Court as to how you would want that done.

10         THE COURT:  All right.  Let me hear from Mr.

11 Gellert on that point.

12         MR. GELLERT:  Okay.  Well two points.

13         THE COURT:  Yes.

14         MR. GELLERT:  One on that point, I think that's a

15 nice attempt to bootstrap her issue into this current one,

16 but I don't think that we're ready for that one yet.

17         THE COURT:  Okay.

18         MR. GELLERT:  I don't think that -- we certainly

19 can discuss it and go through those issues and we have been

20 communicating about those issues, but I don't know that we're

21 willing to --

22         THE COURT:  I mean I don't have a motion in front

23 of me.

24         MR. GELLERT:  Right.  It is a good effort to

25 bootstrap it in, but I don't think that we're not

1  procedurally there.

2          I think, Your Honor, one of the questions that we

3  wanted or suggestions that we wanted to propose was we

4  believe that LenderLive, who's been mentioned before,

5  LenderLive was the sub-servicer for the Debtors.  LenderLive

6  has probably the most fulsome information regarding what's

7  gone in and out of these accounts.  At least for what we know

8  today, we believe that they are the most --

9          THE COURT:  Knowledgeable.

10          MR. GELLERT:  -- knowledgeable about it.  And so

11  one of the things we wanted to do, and I think you've heard

12  today that some efforts have been made to talk to LenderLive

13  and to understand where some of the, especially where that

14  wire went, why it went out, where it went and all those

15  things, and there has been no response.  So we would,

16  perhaps, maybe we could build into some kind of order or

17  bridge order carrying this over saying we need LenderLive's

18  cooperation or something.  You know, I don't want to abuse

19  the Court's power, but one thing to say is we will need

20  LenderLive's cooperation to the extent that Your Honor is

21  able to help us garner that cooperation that might be very

22  appreciated and helpful to all the parties here today.

23          THE COURT:  You could certainly use precatory

24  language.  I don't know that I would have the force behind

25  it, frankly.

1              MR. GELLERT:  Right.

2              THE COURT:  But I certainly would consider such

3   language.

4              MR. GELLERT:  Okay.  Well, Your Honor, maybe we

5   can put together a certification of counsel with a proposed

6   sort of order --

7              THE COURT:  Yes.

8              MR. GELLERT:  -- which basically says in the

9   interim period, you know, no funds will be transferred, they

10  will be held at TCB.

11             THE COURT:  Right.

12             MR. GELLERT:  And we'll have a further hearing.

13  In the interim all parties including LenderLive will be

14  required to work towards a fulsome accounting of the accounts

15  or something along those lines.

16             THE COURT:  Yes.

17             MR. GELLERT:  Yeah, something like that.

18             THE COURT:  All right.  You'll talk to the other

19  parties.

20             MR. GELLERT:  I'll circulate that to them so they

21  can take a look and make sure they're okay with how it's

22  presented.

23             THE COURT:  All right.

24             MR. GELLERT:  It should be benign.

25             THE COURT:  And then as far as --

1          MR. GELLERT:  Scheduling.

2          THE COURT:  -- Mortgage, W.J. Mortgage.

3          MS. ATTANASIO:  W.J.B. Loan LP.

4          THE COURT:  W.J.B. Loan is concerned, I think I

5   need a motion from you.

6          MS. ATTANASIO:  We're happy to put it on a motion,

7   Your Honor.

8          THE COURT:  Okay.  All right.

9          MS. ATTANASIO:  I will get that ready right away.

10          THE COURT:  All right.  And perhaps we can resolve

11   it at the same hearing.

12          MS. ATTANASIO:  That would be ideal, I think.

13          THE COURT:  Mr. Ryan, are you going to make it

14   easier for me or harder for me?

15          MR. RYAN:  From my perspective I'm always making

16   it easy for you, Your Honor.

17          THE COURT:  All right.  Good.

18          MR. RYAN:  I worried too much about tying that

19   issue in and --

20          THE COURT:  My timing standpoint?

21          MR. RYAN:  Well, from a timing point and a

22   complexity standpoint, Your Honor.  One of my concerns is

23   that we're going to go too far into the ins and outs of these

24   accounts, which are, you know, I suspect is going to show a

25   tremendous amount of activity and we're biting off a forensic

1  accounting exercise that perhaps we don't need to do

2  especially if we start to pull into the W.J. Loan issues.

3          I'm hopeful, Your Honor, that perhaps at that

4  hearing we can start off with a preliminary step which is to

5  really take a look at and give Your Honor a more fulsome

6  record of the documents, and how the accounts are titled and

7  the legal effect of those because it may be, Your Honor, and

8  I think it is the case, most of these accounts are really

9  titled W.J. Bradley for the benefit of.  There are legal

10 consequences to that.  And some of the accounts have already

11 been retitled over and there are legal consequences to that.

12 And I think we may be able to come to a place, Your Honor,

13 where you're comfortable ruling on legal and equitable title

14 without getting into the ins and outs.

15          THE COURT:  Yes.

16          MR. RYAN:  And if the Trustee has a claim for some

17 money for servicing fees due against one or more of the

18 parties then they have a claim, but I worry about holding up

19 hundreds of thousands of dollars for a couple of thousand

20 dollars' worth of claims.  And I think there may be a more

21 efficient way just because I worry about tracking all the ins

22 and outs in these accounts is something that's going to take

23 longer than two weeks and is going to take longer than is

24 reasonable under the circumstances if we can address some of

25 the factual and legal issues as to ownership of the accounts

1   and the consequences of what happens.

2          THE COURT:  When do you see us coming back?

3          MR. RYAN:  I hear you on, and I think we certainly

4   need some testimony from Texas Capital on the actual titling

5   of the accounts and the consequences of that.  If we can't do

6   it in two weeks, Your Honor, I would tentatively suggest

7   three weeks out.  I don't know what you're like the last week

8   of June.

9          THE COURT:  All right.

10         MR. RYAN:  But we would certainly like to resolve

11   this sooner rather than later.

12         THE COURT:  I understand.

13         Yes, Mr. Ali.

14         MR. ALI:  Thank you, Your Honor.  I was hoping to

15   get some clarification from Your Honor because if I

16   understood your comments earlier regarding the lettered

17   accounts you don't feel that the evidence before you,

18   including Exhibit D which shows the master agreements and

19   Exhibit G which shows the retitling of accounts in March of

20   2016 approximately a month before the petitions were filed,

21   that that's not sufficient to establish in combination with

22   the guaranteed agreements as well that the funds in the

23   lettered accounts are the property of Ginnie Mae.

24         THE COURT:  I think they are.

25         MR. ALI:  Okay.

1    THE COURT:  I just don't know that they are today.

2 That's the problem I've got.  I haven't heard any contrary

3 evidence.  But to the extent we're going to have an

4 evidentiary hearing, it seems to me that those matters could

5 either be resolved in advance or resolved at that hearing in

6 three weeks.

7    MR. ALI:  Yes, Your Honor.  Thank you very much.

8    THE COURT:  All right.  So now let's look at the

9 calendar.  This will take a good bit of time.  And I was

10 supposed to be out the 29th and 30th and 1st, but I think

11 this matter takes priority, frankly, to the conference that I

12 was scheduled to attend.  Well, actually, that's right after

13 the -- the 5th is right after Independence holiday and I

14 don't want to do it then.  Why don't we say -- how do you

15 look the 29th, 30th or 1st of July?

16    UNKNOWN:  The 28th is horrible, but the rest is

17 fine.

18    THE COURT:  Mr. Rodriguez?

19    MR. RODRIGUEZ:  Your Honor, the 29th and 30th and I

20 guess the 1st as well is fine.  To the extent we could miss

21 the 4th holiday that would be my personal preference.

22    THE COURT:  Of course.  And Friday, of course, is

23 right before that holiday.  How about the 30th?

24    MR. RODRIGUEZ:  That's fine with us, Your Honor.

25    THE COURT:  All right.  We'll start at 10:00 and

1  we'll proceed for as long as we need to.  It's unclear to me

2  how long the evidence will remain, will need to be heard, but

3  we'll get a better idea of that, I think, when perhaps I see

4  papers from you.

5          And as far as W.J.B. Loan is concerned that does

6  strike me as a separate issue at this point and may take more

7  time.

8          MS. ATTANASIO:  There certainly are some separate

9  issues, Your Honor, no doubt about it.  I think we are

10  prepared very quickly and even this week to get something on

11  file before you.  We are more than happy to work with Mr.

12  Gellert or anybody else to try and streamline this.  It may

13  simply be that if and to the extent you are dealing with

14  ownership issues --

15          THE COURT:  Yes.

16          MS. ATTANASIO:  -- it may be more efficient to do

17  it in one setting.

18          THE COURT:  All right.  Why don't I see your

19  motion and we may have time in the afternoon, frankly, to

20  hear those issues as well?  So let me reserve on scheduling

21  that at the moment.

22          MS. ATTANASIO:  I appreciate that.  Thank you,

23  Your Honor.

24          THE COURT:  Yes.

25          MR. GELLERT:  I just want to give Your Honor --

1   before we wrap this up, we do have a joint administration

2   motion that we prepared we're kind of working through.

3            THE COURT:  You do.

4            MR. GELLERT:  I know you want one.

5            THE COURT:  Yes, that would be so much easier than

6   having parties file in all of these cases.

7            MR. GELLERT:  I understand.  So it's in the works.

8   As we mentioned at the last hearing the Trustee felt it was

9   more efficient, actually, to have the proof of claims set up

10  in different categories rather than having to then unbundle

11  them and figure out which Debtor it belonged to.

12           THE COURT:  Okay.

13           MR. GELLERT:  So that's why we had delayed it, but

14  I think we're in a position where we can get that going very

15  soon.

16           THE COURT:  All right.  That's wonderful.

17           MR. BOWDEN:  Your Honor.

18           THE COURT:  Yes, Mr. Bowden.  Yes, sir.

19           MR. BOWDEN:  Regarding scheduling.

20           THE COURT:  Yes.

21           MR. BOWDEN:  Bill Bowden from Ashby & Geddes for

22  W.J.B. Loan.

23           Your Honor, we will get the motion filed.  And,

24  Your Honor, what I would propose to do is put a notice of

25  motion on top of the motion that says a hearing will be

1  scheduled and responses will be scheduled at a date and time

2  to be determined by the Court.  That will give Your Honor the

3  opportunity to take a look at the motion and then presumably

4  I'd hear from Your Honor's Chambers with respect to whether

5  or not we can put it on the calendar together with an

6  objection date.

7           THE COURT:  That would be fine.

8           MR. BOWDEN:  All right.

9           THE COURT:  That works out well, Mr. Bowden.

10           MR. BOWDEN:  I just wanted to make sure we crossed

11  that T, Your Honor, so we're not in limbo when the motion

12  gets filed.

13           THE COURT:  That's a good proposal.  Thank you.

14  All right.  Anyone else?  Well, I will see you back here on

15  the 30th.  I thank you.  Hopefully we'll be able to

16  straighten things out.  We stand in recess everyone.  Good to

17  see you.

18        (Court Adjourned)

19

20

21

22

23

24

25

1                              CERTIFICATE

2    We certify that the foregoing is a correct transcript from

3    the electronic sound recording of the proceedings in the

4    above-entitled matter.

5
     /s/Mary Zajaczkowski                    September 1, 2016
6    Mary Zajaczkowski, CET**D-531                  Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25